IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EUGENE ROY NIBBELINK and | ) | CASE NO. 03-bk-00507-GLP |
| LUISE T. NIBBELINK | ) | CHAPTER 13 |
| | ) | |
| Plaintiffs. | | |

EUGENE ROY NIBBELINK and
LUISE T. NIBBELINK,

    Plaintiffs,   ADV. PROC. NO.:

vs.

WELLS FARGO BANK, N.A.,
successor by merger to WELLS FARGO
HOME MORTGAGE, INC.,

    Defendant.
_____/

## COMPLAINT

The Plaintiffs, EUGENE R. NIBBELINK and LUISE T. NIBBELINK, sue the Defendant, WELLS FARGO BANK, N.A., successor by merger to WELLS FARGO HOME MORTGAGE, INC., and allege:

### JURISDICTION AND VENUE

1. Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United States Code in that this proceeding arises in and is related to the above-captioned Chapter 13 case under Title 11 and concerns property of the Plaintiffs in that case.

1

2. This is a core proceeding for which this Court has jurisdiction.

3. Venue lies in this District pursuant to Section 1409(a) of Title 28 of the United States Code.

## PARTIES

4. The Plaintiffs, EUGENE R. NIBBELINK and LUISE T. NIBBELINK, were Debtors under Chapter 13 of Title 11 in the above captioned case.

5. The Defendant, WELLS FARGO BANK, N.A., successor by merger to WELLS FARGO HOME MORTGAGE, INC., is a mortgage lender and servicer who at all times material to this complaint was engaged in the business of obtaining and servicing consumer mortgage loans in Duval County, Florida, with a principal place of business located at One Home Campus, Des Moines, IA 50328-1001.

## FACTUAL ALLEGATIONS

6. On January 30, 1998 the Plaintiffs executed a note in the amount of $100,419.00 payable to First South Bank. The note was secured by a mortgage on Plaintiff's homestead property.

7. The note and the mortgage were subsequently assigned to Norwest Mortgage, Inc. on February 30 [sic] 1998. Norwest Mortgage Inc. is now known as Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage, Inc. ("Wells Fargo")

8. On January 17, 2003, the Plaintiffs filed a voluntary petition seeking relief under Chapter 13 in the U.S. Bankruptcy Court, Middle District of Florida, Jacksonville Division and the case was assigned case no. 03-bk-00507-GLP.

9. Plaintiff's mortgage with Wells Fargo was current through January of 2003 when the Chapter 13 was filed and there was no pre-petition arrearage to be dealt with under the Chapter 13 plan.

10. On April 2, 2003, Wells Fargo, through its legal counsel, Alberto H. Hernandez, filed a motion for relief from stay or for adequate protection. In the motion it was alleged that the mortgage was in default since February of 2003.

11. On April 28, 2003, the bankruptcy court entered an order granting adequate protection in the amount of $818.00 per month to be paid by the Chapter 13 Trustee from each interim payment received by the Trustee from the Plaintiffs after the date of the Adequate Protection Order.

12. Even though Albert H. Hernandez filed a written notice of appearance on April 2, 2003, he failed to file a proof of claim necessitating counsel for the Plaintiffs to file a proof of claim for Wells Fargo, which was filed on June 18, 2003.

13. On June 27, 2003, the clerk's office gave formal notice to Wells Fargo pursuant to Rule 3004 that the Debtors (Plaintiffs) had filed a claim on Wells Fargo's behalf in the amount of $94,641.32. Debtor's proof of claim was assigned claim #12, alleged no arrearage, and was supported by the Affidavit of Indebtedness used by Wells Fargo's counsel in the motion for adequate protection.

14. It was clear at this point that Wells Fargo and the Plaintiffs were in agreement that the mortgage was current when the Chapter 13 case was filed on January 17, 2003.

15. On September 19, 2003 an Order of Confirmation was entered confirming the first amended plan dated June 18, 2003. The plan provided for Wells Fargo to be

paid $818.00 per month, for 36 months. No appeal was taken by Wells Fargo from the Order of Confirmation.

16. The Trustee's records reflect that the Plaintiff's first payment was due to be paid to the Trustee on March 3, 2003. In view of the fact that the plan that got confirmed was a 36 month plan, the last payment would be due on February 3, 2006.

17. The Trustee's records reflect that the first adequate protection payment was made to Wells Fargo on May 2, 2003, in the amount of $818.00. Since the adequate protection order was signed on April 28, 2003, the first adequate protection payment was made in a timely fashion.

18. On April 6, 2006, the Trustee filed a Notice of Completion of Chapter 13 Plan and represented that Plaintiffs had made all required payments. Wells Fargo made no challenge to the Trustee's representations.

19. On April 10, 2006, the Court entered a Chapter 13 Discharge. Wells Fargo did not challenge the discharge by filing a motion for reconsideration, nor did Wells Fargo file an appeal.

20. The Chapter 13 plan that was confirmed by the Court was the plan dated June 18, 2003, and the plan was incorporated by reference in the Order of Confirmation dated September 19, 2003. Paragraph 6 of the June 18, 2003 plan reads as follows:

**Late Fees or Attorneys Fees:** No creditor shall be entitled to any late fees, attorney's fees, or interest other than the interest contained in the payments provided for by the plan during the bankruptcy, including the life of this plan. Upon successful

4

completion of this plan, the Debtor's mortgage balance shall be deemed current as a matter of law.

21. The Trustee sent the last check to Wells Fargo on February 2, 2006. The check was in the amount of $1,397.14 and was received by Wells Fargo on February 8, 2006.

22. On February 8, 2006, Wells Fargo, in its monthly mortgage statement to the Plaintiffs, acknowledged receipt of the $1,397.14. However, Wells Fargo only applied $871.55 to the principal, interest and escrow and left $525.59 unapplied. In addition Wells Fargo claimed that there was $3,486.20 in overdue payments and $298.00 in late charges.

23. Plaintiffs commenced making payments directly to the defendant upon completion of the 36 month Chapter 13 payment plan, and paid those payments in a timely fashion until Plaintiffs sold their home and paid off the mortgage held by Defendant.

24. On August 14, 2006, an attorney from the law firm that represented the Plaintiffs in the Chapter 13 and who was attempting to clear up accounting issues with Wells Fargo, sent a "qualified written request" to Wells Fargo requesting pertinent information concerning Wells Fargo's proper balance owing. No response was received.

25. On October 3, 2006, a follow up to the "qualified written request" was sent and again, no response was received.

26. Upon information and belief, Defendant added on to the mortgage debt, attorney's fees, interest, late charges, inspection fees and other related expenses that were

accrued during the 36 months and never sought court approval for the charges and expenses during the pendency of the Chapter 13 case.

27. By improperly making the aforestated charges to the loan and collecting them at the time of the sale of the home, the Defendant's actions constitute a violation of the discharge injunction.

28. The violation was knowing, willful, egregious and a calculated effort on the part of the Defendant to bypass the bankruptcy court's Orders of Confirmation and Discharge. The violation showed malevolent intent. The defendant clearly acted in bad faith and utter arrogance.

29. The Plaintiffs were current on their mortgage when the case was filed in January of 2003, made all 36 payments on their confirmed plan in a timely fashion including all adequate protection payments, and obtained a Chapter 13 discharge on April 10, 2006. The discharge, working in conjunction with the confirmed plan, resulted in the mortgage balance being deemed current as a matter of law. However, even though plaintiff made all their mortgage payments directly to the Defendant upon completion of the Chapter 13 case up through the pay off of the mortgage, Defendant still added over $3,000.00 in fees, costs and charges for no reason other than they felt they had the leverage and could do whatever they wanted to.

30. While the $3,000.00 + improperly added to the mortgage balance is sufficient grounds to find total disregard of the law and an attitude of total arrogance on the part of the Defendant, there are several personal factors that were in part caused or exacerbated by Defendant's misconduct..

31. Shortly after completing the payments under the plan, Plaintiffs began receiving letters and billing statements from Defendant, stating that their mortgage was in serious default and that foreclosure may be imminent. Collection calls from Defendant commenced advising of $3,000 + arrearage and further advising that without payment, foreclosure would soon occur. Despite the fact that the Plaintiff advised the collectors that they were current through discharge and had made every payment since discharge, the collectors continued to call and harass the Plaintiffs.

32. The Plaintiffs personally called supervisors and managers in the Defendant's collection department, but still no correction was made. The threatening calls and letters continued.

33. In 2006, the Plaintiffs tried to refinance Defendant's mortgage. Ditech pulled Plaintiff's credit report and refused to do a refinance for them because Defendant was reporting to the Credit Reporting Agencies that the Plaintiffs were behind on their mortgage and had a poor payment history.

34. Plaintiffs pulled a credit report on July 12, 2006, and found that Defendant was reporting that they were past due for March of 2005 through July of 2006.

35. Plaintiffs were also turned down for two credit cards due to the inaccurate and erroneous information being reported on their credit reports by Defendant.

36. After receiving their discharge, Plaintiffs experienced several financial hardships that depleted what little savings they had. One of their children, who had no health insurance, was hit by a drunk driver, and their other two children required financial assistance for personal legal issues.

37. Plaintiffs tried one more time to refinance their home, but were again turned down because Wells Fargo continued to report that Plaintiffs were three months in arrears.

38. As a result of being unable to access the equity in their home by refinancing, Mr. Nibbelink had to turn down two job offers. As a result of the above, the Plaintiffs put their home up for sale. In October of 2006, as Mr. Nibbelink was working on his home to prepare it for sale, he had a near fatal heart attack. Despite the heart attack, Mr. Nibbelink had to return to work prematurely because he ran out of sick days and could not afford anymore time off. His doctors advised him that he needed more time off for recovery, but unless and until he could free up the equity in his home, he was forced to continue work.

39. The Plaintiffs found a buyer for the home but had to sell the home for a price lower than market value because of their inability to hold onto it.

**WHEREFORE**, Plaintiffs request the Court to:

1. Take jurisdiction over this proceeding.
2. Require Defendant to give an equitable accounting of all monies received and charges made and demonstrate to the Court why the Plaintiffs were over $3,000 in arrears upon completion of the 36 month Chapter 13 plan and at the time of the sale of their home.
3. Find that Defendant violated the Court's Order of Confirmation and the Order of Discharge.

4. Find that Defendant was derelict in its duties and responsibilities to properly credit the payments received and improperly making charges to the account that Defendant knew required court approval.

5. Find that Defendant's actions or failure to act was knowing, willful, egregious, done with malevolent intent, done in bad faith and with utter arrogance and defiance of court orders.

6. Find that Plaintiffs are entitled to recover actual, compensatory, and punitive damages for Defendant's actions or failure to act.

7. Assess attorney's fees and costs in favor of Plaintiffs.

8. Grant such other relief as the court deems advisable in this proceeding.

BANKRUPTCY LAW FIRM
OF LANSING J. ROY, P.A.

*/s/ Lansing J. Roy*

**Lansing J. Roy, Esquire**
Florida Bar No. 120716
**Christopher R. DeMetros, Esquire**
Florida Bar No. 0863467
**Anthony J. McDonald, Esquire**
Florida Bar No. 039037
1710 Shadowood Lane, Suite 210
Jacksonville, FL  32207
Telephone:  (904) 391-0030
Facsimile:  (904) 391-0031